BARCLAY DAMON, LLP

IN THE UNITED STATES COURT
OF FEDERAL CLAIMS

**CLAUDE MAYO CONSTRUCTION COMPANY, INC.,**

      *Plaintiff,*

  -*vs*-

**THE UNITED STATES**

      *Defendant*.

**AMENDED COMPLAINT**

Case No. 15-1263C
Judge Kaplan

  Plaintiff Claude Mayo Construction Company, Inc. ("Plaintiff" or "CMCC"), by its attorneys, Barclay Damon, LLP, as and for its Complaint against the Defendant, states as follows:

  1. Plaintiff is a corporation formed pursuant to the laws of the State of New York with its principal office located at 53 Humber Avenue, Buffalo, New York 14215.

  2. As more particularly detailed below, Plaintiff was awarded a contract, Contract No. GS-02P-13-PW-0009 (the "Contract"), by the United States General Services Administration ("GSA") for the renovation of a portion of the James M. Hanley Federal Building located in Syracuse, New York.

  3. GSA subsequently terminated the Contract on the grounds that Plaintiff had purportedly defaulted on its contractual obligations.

  4. Plaintiff appealed the termination to the GSA Contracting Officer, who, on or about July 22, 2015, issued a final determination denying Plaintiff's appeal and upholding the GSA's termination of the Contract for default.

  5. On April 25, 2016 and on October 7, 2016, Plaintiff submitted additional, supplemental claim letters to the GSA Contracting Officer concerning Plaintiff's claims for monetary damages and breach of contract by the GSA.

6. On or about December 16, 2016, the GSA Contracting Officer issued a final determination denying Plaintiff's monetary claims and breach of contract claims.

7. Plaintiff now brings this action and jurisdiction is proper in this Court pursuant to the Contracts Disputes Act of 1978, 41 U.S.C. 7101, *et seq.*, and, more specifically, §7104(b).

8. In this action, Plaintiff seeks a determination that it was not in default of its contractual obligations and, as such, the GSA's determination in that respect was improper; Plaintiff further seeks monetary damages arising from its improper termination, GSA's breach of the Contract, and other conduct by the GSA which has caused Plaintiff to incur damages.

## FACTUAL BACKGROUND

**A. The Contract, Award, and Commencement of Work:**

9. On April 3, 2013, GSA sent Plaintiff a letter requesting that the Plaintiff submit a proposal for the performance of certain construction work, namely the furnishing of all materials, equipment, labor and supervision for renovation of the United States Attorney's Office located on the 8th floor of the James M. Hanley Federal Building in Syracuse, New York (the "Project"). A copy of the April 3 letter along with the Solicitation, Offer, and the Agreement that were provided with the request letter are attached as **Exhibit A** hereto.

10. Plaintiff responded to the request and submitted its proposal for the Project.

11. On July 23, 2013, GSA awarded the Contract to Plaintiff for a total lump sum price of $732,003.00. A copy of the July 23, 2013 letter (the "Award Letter") is attached hereto as **Exhibit B**.

12. The Award Letter instructed Plaintiff to provide, among other things, information relating to payment and performance bonds as well as the certificates of insurance required for the Project by August 5, 2013.

BARCLAY DAMON, LLP

13. Plaintiff timely provided the bond and insurance information to the GSA, and, on August 2, 2013, GSA issued a Preliminary Notice to Proceed. A copy of the August 2, 2013 Preliminary Notice to Proceed is attached as **Exhibit C**.

14. The Preliminary Notice to Proceed instructed Plaintiff to begin acquiring security clearances for its employees.

15. The Preliminary Notice to Proceed also stated that a "Final Notice to Proceed" would be issued prior to the start of any on-site work, and that the on-site work would have a performance period of 150 calendar days.

16. Plaintiff thereafter proceeded to obtain security clearances for its employees, which were transmitted to the GSA in or around August 2013.

17. Also in or around August 2013, Plaintiff began the submittal process with respect to the various materials to be used and work to be performed for the Project.

18. GSA did not advise Plaintiff that it was waiting for any additional information from Plaintiff or that Plaintiff otherwise had any responsibility with respect to the issuance of the "Final Notice to Proceed." Rather, the determination of when to issue the Final Notice to Proceed was entirely within the purview of GSA.

19. GSA ultimately issued the Final Notice to Proceed on November 21, 2013, which was signed by Plaintiff's President, Claude Mayo, on November 22, 2014. A copy of the Final Notice to Proceed is attached as **Exhibit D**.

20. The Final Notice to Proceed authorized Plaintiff to commence on-site work.

21. The Final Notice to Proceed also started the time running on the Contract's one-hundred fifty (150) day time period to complete the Project.

- 3 -

12898142.2

22. Thus, as the Final Notice to Proceed was issued on November 21, 2013, the original completion date for the Project would have been April 21, 2014.

23. Plaintiff commenced work on the Project on November 22, 2013.

**B.    Contract Modifications and Submittal Issues**:

24. Shortly after work began on the Project, GSA issued Contract Modification PS01 ("CM PS01").

25. CM PS01 substantially modified the Contract with respect to the HVAC work to be performed.

26. The Contract originally called for Plaintiff to refurbish fifteen (15) "PTAC" (Packaged Terminal Air Conditioner) units.

27. The existing PTAC units that were intended to be refurbished were over 30 years old, which is well beyond the expected useful life of the units. Plaintiff, after reviewing the scope of work with its HVAC subcontractor, advised GSA of this issue.

28. Accordingly, CM PS01 modified the contract by eliminating the refurbishing of the existing PTAC units and adding a scope of work to remove the existing PTAC units and replace them with 15 new PTAC units.

29. As a result of this new scope of work, the total Contract amount was increased by $79,043 from $732,003 to $811,046.

30. CM PS01 was executed on December 24, 2013. A copy of CM PS01 is attached as **Exhibit E**.

31. In addition to increasing the total amount of the Contact, CM PS01 acknowledged that an extension of the Contract completion date would be appropriate.

32. In this regard, CM PS01 stated: "This contract is hereby extended for the additional work from 28 Feb 2014 to 01 Apr 2014."

33. While expressly stating that the Contract was to be extended as a result of the additional work, the dates inserted into CM PS01 were both incorrect and actually shortened the time for completion of the Contract, as the original Contract completion date was April 21, 2014 (i.e.,150 days from the November 21, 2013 Final Notice to Proceed).

34. The need to extend the Contract completion date beyond April 21, 2014 as a result of the change to the HVAC work was explained to the GSA by the Plaintiff.

35. In this regard, there was a lead time of twelve (12) weeks associated with obtaining the new PTAC units from the manufacturer, which was further exacerbated by a manufacturer shut-down over the holidays.

36. There was an understanding between Plaintiff and the GSA that CM PS01 would extend the Contract completion date until July 2014 to account for the additional time needed to remove and replace, rather than refurbish, the PTAC units.

37. Shortly after CM PS01, GSA sent Plaintiff Requests for Proposals ("RFP") for two additional contract modifications.

38. On January 13, 2014, GSA sent Plaintiff an e-mail requesting a proposal for Contract Modification PS02 ("CM PS02").

39. CM PS02 included some proposed changes to certain trim woodwork, but more substantially sought to add carpet padding to all carpeted areas.

40. Both the e-mail and cover letter accompanying the RFP for CM PS02 stated that Plaintiff's response to the proposal should be submitted by Friday, January 24, 2014.

BARCLAY DAMON, LLP

12898142.2

41. On January 16, 2014, GSA sent Plaintiff another e-mail requesting a proposal for Contract Modification PS03 ("CM PS03").

42. CM PS03 proposed certain changes to duct work and wall partitions, but more substantially sought to make changes to doors and door hardware.

43. As with CM PS02, the e-mail and cover letter accompanying the RFP for CM PS03 stated that a response to the proposal should be submitted by Friday, January 24, 2014.

44. Plaintiff submitted responses to the proposals for CM PS02 and CM PS03 via e-mail on January 28, 2014 – the short delay in submitting the responses was due to Plaintiff awaiting pricing information from its subcontractors and suppliers.

45. Following Plaintiff's submittal of its proposals for CM PS02 and CM PS03, Plaintiff and GSA engaged in discussions regarding the proposed modifications.

46. Upon information and belief, GSA and/or others involved in the Project repeatedly made design changes affecting the scope of work and materials to be used in relation to the proposed modifications, which delayed and impeded the ability to finalize the proposed modifications and, ultimately, impacted Plaintiff's ability to complete its work in a timely manner as discussed herein.

47. However, GSA never finalized either CM PS02 or CM PS03.

48. GSA's failure in this regard had a significant impact on Plaintiff's ability to progress and complete the Project, to wit: the walls at the doors affected by the proposed modifications to the doors called for in CM PS03 could not be completed; additionally, Plaintiff could not complete ceiling work, painting, wallcovering, or finish flooring as each of those items would also be impacted by the changes proposed in CM PS02 and CM PS03.

12898142.2

49. In addition, the changes proposed in CM PS02 and CM PS03 required additional lead time to obtain materials. For instance, the lead time needed for obtaining doors and hardware was twelve (12) weeks – a fact of which GSA was aware.

50. GSA was aware of both the work coordination and lead time issues created by CM PS02 and CM PS03, as those issues were communicated to them by Plaintiff.

51. Ultimately, by letter dated March 28, 2014, GSA rescinded CM PS02 and CM PS03.

**C. GSA's Improper Termination of the Contract for Default:**

52. On February 11, 2014, GSA issued a "Notice to Cure" letter to Plaintiff.

53. The Notice to Cure asserted that Plaintiff had failed to provide schedules of work completed and work to be completed for the remainder of the Contract period, and that Plaintiff had failed to respond to certain contract modification proposal requests (i.e. CM PS02 and CM PS03).

54. The Notice to Cure erroneously stated that the Contract completion date was April 1, 2014, and, thus, incorrectly indicated that only 48 days remained to complete the Contract.

55. On February 20, 2014, Plaintiff responded to the Notice to Cure advising GSA that schedules of work done and to be completed were provided at each weekly meeting (as shown in the meeting minutes) and that responses to modification proposals (CM PS02 and CM PS03), in fact, had previously been submitted to GSA.

56. Plaintiff's February 20 letter also advised GSA that completion of the Contract in the (incorrect) 48 days indicated by GSA would not be possible based on GSA's conduct in failing to timely address discrepancies in the Contract documents as well as GSA's failure to finalize the outstanding modification proposals contained in CM PS02 and CM PS03

57. On March 17, 2014, GSA issued a "Show Cause Notice" to Plaintiff advising that GSA was considering termination of the Contract for default.

BARCLAY DAMON, LLP

12898142.2

58. The Show Cause Notice asserted that Plaintiff had failed to provide a schedule demonstrating that the Project would be completed by the Completion date. However, the Show Cause Notice was still based on the incorrect April 1, 2014 completion date.

59. The Show Cause Notice also continued to assert that Plaintiff had failed to properly respond to the modification proposal requests, and also asserted that Plaintiff had failed to install mechanical and electrical components per approved Contract specifications.

60. Before Plaintiff could respond to the March 17 Show Cause Notice, GSA, on March 28, 2014, issued a "Stop Work Order" directing Plaintiff to cease all work and any further orders or subcontracts for materials or services associates with the Contract. The Stop Work Order also asserted that Plaintiff had failed to obtain approval of coordination drawings for certain mechanical systems prior to installation of those systems.

61. The Stop Work Order did not comply with and was contrary to the terms of the Contract.

62. In the interim, on March 26, 2014, GSA sent Plaintiff a proposed Contract Modification PS04 ("CM PS04").

63. CM PS04 proposed to alter the completion date for the Contract from the improper date of April 1, 2014, as stated in CM PS01, back to the original completion date of April 21, 2014.

64. Plaintiff refused to sign CM PS04 because, among other reasons, it still contained an improper completion date; that is, as stated above, CM PS01 specifically noted the need for an extension of time to complete the Contract and the parties had agreed upon July 14, 2014. April 21, 2014 was the original contract completion date based on the 150 day time period from the Final Notice to Proceed. Thus, GSA had still failed to include the additional time necessitated by CM PS01 – let alone other delays caused by GSA's conduct.

12898142.2

65. Upon Plaintiff's refusal to sign CM PS04, on April 17, 2014, GSA unilaterally issued CM PS04 as a modification to "reflect administrative changes."

66. CM PS04 was improperly issued and was contrary to the terms of the Contract.

67. The issues raised by GSA in the Notice to Cure, the Show Cause letter, and the Stop Work Order were without merit, contrary to the terms of the Contract, contrary to the facts as to what actually occurred during the course of the Project, and were the result of GSA's own inconsistent and improper administration of the Contract.

68. Notwithstanding, Plaintiff made every reasonable attempt to address each of the issues raised by GSA in the Notice to Cure, the Show Cause letter, and the Stop Work Order in order to complete the Contract in a timely manner.

69. On April 22, 2014, GSA issued a notice indicating that it was assessing liquidated damages against Plaintiff based on the failure to complete the Project by the (incorrect) April 21, 2014 completion date.

70. Despite Plaintiff's efforts to move the Project forward and complete the Contract, on June 12, 2014, GSA issued a "Notice of Termination for Default."

71. The Notice of Termination asserted as grounds for default many of the same incorrect and unsupported issues previously raised in GSA's prior communications (i.e. the Notice to Cure, the Show Cause letter, and the Stop Work Order) such as failure to provide a schedule, failure to provide responses to modification proposals, failure to obtain coordination drawings, and failure to complete the Contract by the completion date. The Notice of Termination also asserted that Plaintiff had delayed the Project start date by failing to timely obtain security clearances and failing to provide bond and insurance information, and that Plaintiff had failed to provide a Project Coordinator for the Project.

BARCLAY DAMON, LLP

12898142.2

72. Each of the grounds raised as a basis for termination for default in the Notice of Termination is without merit, contrary to the terms of the Contract, contrary to the facts as to what actually occurred during the course of the Project, and are, in fact, the result of GSA's inconsistent and improper administration of the Contract, which includes, but is not limited to, GSA's failure to extend the Contract completion date with the issuance of CM PS01 as was clearly contemplated and agreed to by the parties, GSA's failure to timely and properly respond to modification requests CM PS02 and CM PS03, GSA's interference with Plaintiff's contractual rights and obligations to coordinate work, and GSA improperly and incorrectly imposing upon Plaintiff conditions that were not required by and/or were inconsistent with the terms of the Contract. Plaintiff, at all times, complied with the requirements of the Contract and attempted to progress the Project despite GSA's inconsistent and improper administration of the Contract.

73. By letter dated Mary 18, 2015, in accordance with the terms of the Contract, Plaintiff appealed its termination for default to the GSA's Contracting Officer. Plaintiff's appeal included evidence demonstrating Plaintiff's compliance with the Contract, refuting the grounds asserted by GSA for default in the Notice to Terminate, and demonstrating that GSA's conduct was, in fact, to blame for any delays or deficiencies in the completion of the Project.

74. By letter received by Plaintiff on July 22, 2015, GSA's Contracting Officer issued his final decision denying Plaintiff's appeal.

75. On April 25, 2016, Plaintiff submitted a supplemental claim letter to the GSA Contracting Officer concerning its claims for monetary damages.

76. On October 7, 2016, Plaintiff submitted a further supplemental claim letter to the GSA Contracting Officer further clarifying its claims for monetary damages and claims for breach of contract against the GSA.

12898142.2

BARCLAY DAMON, LLP

77. On December 16, 2016, the GSA Contracting Officer issued his final determination denying Plaintiff's claims for monetary damages and breach of contract.

## FIRST CAUSE OF ACTION
(For Declaration)

78. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 77 above as if fully restated herein.

79. GSA's determination to terminate Plaintiff's contract for default was improper and without basis.

80. The grounds cited by GSA for terminating Plaintiff for default are not supported by law or fact.

81. Plaintiff at all times complied with the terms of the Contract and constructed the Project in a diligent and professional manner.

82. Any delays or deficiencies in the performance of the Contract and the completion of the Project were caused by the GSA's conduct, including, but not necessarily limited to, its inconsistent and improper administration of the Contract, its failure to extend the Contract completion date with the issuance of CM PS01 as was clearly contemplated and agreed to by the parties, its failure to timely and properly response to modification requests CM PS02 and CM PS03, its interference with Plaintiff's contractual rights and obligations to coordinate work, and the improper and incorrect imposition upon Plaintiff of conditions that were not required by and/or were inconsistent with the terms of the Contract.

83. Accordingly, Plaintiff seeks a declaration from the Court that the GSA's termination of the Contract for default was improper and should be converted to a termination for convenience, as per the terms of the Contract.

BARCLAY DAMON, LLP

## SECOND CAUSE OF ACTION
### (For Breach of Contract)

84. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 83 above as if fully restated herein.

85. Plaintiff and GSA lawfully entered into the Contract.

86. GSA's conduct throughout the course of the Project, its inconsistent and improper administration of the Contract, its termination of Plaintiff for default, and other conduct set forth herein and to be demonstrated in this matter constitute material breaches of the Contract.

87. In particular, prior to the improper termination, Plaintiff submitted applications for payment for work that was completed and accepted by GSA in the amount of $207,101.98.

88. To date, GSA has, without basis, failed and refused to pay Plaintiff for the work it completed on the Project and to which it is entitled under these payment applications.

89. Such failure to pay Plaintiff for the completed work constitutes a breach of contract.

90. As a result of said breaches, Plaintiff has incurred, and continues to incur, damages.

91. Accordingly, Plaintiff is entitled to judgment in an amount to be determined at trial, including, but not limited to, amounts owed to Plaintiff for work performed on the Project for which Plaintiff has not been compensated, plus applicable interest, fees (including its reasonable attorneys' fees) and costs.

## THIRD CAUSE OF ACTION
### (For Compensation upon Declaration)

92. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 88 above as if fully restated herein.

93. The Contract permitted the GSA to terminate Plaintiff for convenience.

12898142.2

94. Upon a termination for convenience, Plaintiff is entitled to receive compensation for a variety of items, including, but not necessarily limited to, amounts then owed to Plaintiff for work performed on the project up to the date of termination as well as reasonable profits for the work performed up to that date and other expenses incurred by the Plaintiff associated with its work on the project and the termination.

95. As set forth herein, Plaintiff was improperly terminated for default, and seeks through this action a declaration that the termination for default be converted to a termination for convenience.

96. Upon a declaration that the termination for default be converted to a termination for convenience, Plaintiff is entitled to be compensated for all amounts permitted under the Contract, including, but not limited to, amounts owed to Plaintiff for work performed on the Project for which Plaintiff has not been compensated, lost profits earned by the Plaintiff up to the time of the improper termination, applicable interest, fees (including its reasonable attorneys' fees) and costs, and all amounts for which Plaintiff may be liable as a direct result of its improper termination for default.

**WHEREFORE,** Plaintiff demands judgment:

(a) On its First Cause of Action, declaring that GSA's termination of Plaintiff for default was improper and should be converted to a termination for convenience;

(b) On its Second Cause of Action, finding that GSA breached the Contract and awarding Plaintiff damages in an amount to be determined at trial, which amount shall include, among other things, amounts owed to Plaintiff for work performed on the Contract, plus applicable interest, fees (including its reasonable attorneys' fees) and costs;

(c) On its Third Cause of Action, upon a declaration that the termination for default be converted to a termination for convenience, finding that Plaintiff is entitled to compensation including, but not limited to, amounts owed to Plaintiff for work performed on the Project for which Plaintiff has not been compensated, Plaintiff's lost profits for work performed up to the date of the improper termination, applicable interest, fees (including its reasonable

12898142.2

attorneys' fees) and costs, and all amounts for which Plaintiff may be liable as a direct result of its improper termination for default; and

(d) Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated: January 27, 2017            **BARCLAY DAMON, LLP**

By:     /s/ Nicholas J. DiCesare
         Nicholas J. DiCesare

*Attorneys for Plaintiff*
*Claude Mayo Construction Company, Inc.*
The Avant Building
200 Delaware Avenue, Suite 1200
Buffalo, New York 14203
Telephone: (716) 566-1524
Facsimile: (716) 566-4069
E-mail: ndicesare@barclaydamon.com