## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **CLAUDE MAYO CONSTRUCTION COMPANY, INC.,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 15-1263C (Judge Kaplan) |
| **THE UNITED STATES,** | ) ) | |
| Defendant. | ) | |

### MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFF

Pursuant to Rule 83.1(c)(5) of the Rules of the United States Court of Federal Claims, Barclay Damon LLP and Nicholas J. DiCesare, Esq., (collectively, "Counsel") seek to withdraw as counsel for Plaintiff Claude Mayo Construction Company, Inc. ("CMCC").

The basis of the motion to withdraw is the deterioration of the attorney-client relationship to such an extent that it has become impossible to effectively serve as counsel and our continued representation of CMCC would be both inappropriate and ineffective.

Various federal courts have held that a motion to withdraw as counsel should be granted where "the attorney-client relationship is no longer productive and . . . the discord that has characterized their relationship over many months appears irreparable." *Cahill v. Donahoe*, 2014 WL 3339787 (W.D.N.Y. 2014); *see also Generale Bank, New York Branch v. Wassel*, 1992 WL 42168 (S.D.N.Y. 1992) ("[T]he existence of an irreconcilable conflict between attorney and client is a proper basis for an attorney to cease representing his client"); *Silva v. Sec'y of HHS*, 2014 U.S. Claims LEXIS 605, No. 09-871V, at *2 (Ct. Fed. Cl. 2014) (noting that plaintiff's counsel's motion to withdraw was granted based on "irreconcilable differences" with client); *Woods v. Sec'y of HHS*, 105 Fed. Cl. 148, 150 (Ct. Fed. Cl. 2012) (similarly noting that counsel's motion to withdraw was granted based on "irreconcilable differences"); *Brickwood Contrs., Inc. v. United States*, 2009 U.S. Claims LEXIS 133, No. 10-377V, at *2 (Ct. Fed. Cl. 2009) (likewise

19690580.1

noting motion to withdraw granted where counsel "'reached an impasse' with plaintiff concerning the prosecution of the case and because communications with plaintiff had 'rendered the representation unreasonably difficult for counsel'").

Counsel has, at various times throughout this matter, had difficulty effectively communicating with CMCC's principal, Claude Mayo. Despite Counsel's best efforts to effectively prosecute this matter in a manner that would achieve a beneficial result for CMCC, Mr. Mayo has refused to take Counsel's advice and direction, and it now appears that any ability by Counsel to effectively communicate with Mr. Mayo in a reasonable manner has completely broken down.

In particular, over the course of the past several months, Counsel and the Government's counsel, Mr. Upton, have engaged in significant efforts to reach a settlement of this matter. Ultimately, the parties reached an agreement in principle to resolve this case upon terms that counsel for CMCC believes are extremely favorable to CMCC.

As detailed herein, the terms of this settlement and the settlement negotiations were all undertaken with the direction and approval of Mr. Mayo on behalf of CMCC. Specifically, following discussions in late June, via e-mail on July 1, 2019, Mr. Mayo authorized Counsel to proceed with the Court's non-binding mediation program.[1] Based on that direction, Counsel and the Government jointly requested that this case be referred to the Court's mediation program. That request was granted and the case was referred to Senior Federal Court of Claims Judge Eric Bruggink for mediation. After going through that process and engaging in an initial scheduling conference with Judge Bruggink, by e-mail dated July 24, 2019, Mr. Mayo stated that he did not

---

[1] To the extent desired by the Court, Counsel will provide all correspondence referenced herein for *in camera* review in order to preserve the attorney-client privilege. Counsel also sent a detailed letter to Mr. Mayo on June 28, 2019 because of communication and disconnect issues in relation to how the litigation was being handled. A copy of that letter certainly can be provided for *in camera* review as well.

want to proceed with mediation, and instead wanted to attempt direct negotiations with the Government.

The settlement negotiations were conducted via telephone and e-mail, including e-mails dated July 24, 2019, July 29, 2019, and August 5, 2019 between Counsel and Mr. Mayo and between Counsel and the Government attorney, Mr. Upton.

Thereafter, again based on Mr. Mayo's direction, Counsel advised the Government's attorney that CMCC accepted the terms of settlement offered by the Government, and the Government attorney then began administrative efforts to authorized that settlement.

In the meantime, Counsel engaged in negotiations with CMCC's surety to attempt to resolve CMCC's outstanding liability to the surety.  In particular, Counsel exchanged a number of e-mails with Mr. Mayo and the surety representative on a number of dates, including August 28, 2019, September 3, 2019, September 11, 2019, and September 12, 2019, concerning efforts to resolve the surety's claim against CMCC as well as against Mr. Mayo and his wife individually (as guarantors).  Ultimately, via e-mail on September 12, 2019, Mr. Mayo advised Counsel that he accepted the settlement terms offered by the surety at that time.

Based on CMCC's direction and agreement to the settlement terms, over the past several months, Counsel has continued to work with both the Government attorney and the surety representative to draft settlement agreements confirming the agreed upon terms of settlement detailed above.  Counsel provided Mr. Mayo with several updates in October and November as the attorneys continued working to finalize the settlement.

On December 4, 2019, Counsel sent an e-mail to Mr. Mayo with the nearly-final draft of the settlement agreement between CMCC and the Government as well as the previously agreed upon Settlement Agreement with the surety.  Mr. Mayo responded via e-mail later that afternoon stating that he would not execute the settlement agreements and has provided further e-mails to

- 4 -

Counsel indicating that the relationship between Counsel and Mr. Mayo has broken down beyond repair.

Counsel thereafter sent Mr. Mayo a detailed letter on December 5, 2019 outlining all of the above communications, directions, and agreements that Mr. Mayo previously made without any objection or indication of dissatisfaction, and reiterating what Counsel believed was a very favorable result in this matter based on the negotiation efforts that led to the settlement.

Mr. Mayo responded to that letter on December 6, 2019 essentially accusing Counsel of misconduct and demonstrating that he had no intent on proceeding with the previously agreed upon settlement.

The history set forth above and, in particular, the most recent communications from Mr. Mayo demonstrate that the attorney-client relationship has deteriorated beyond repair and Counsel will not be reasonably able to serve as CMCC's counsel.

While significant discovery has been completed in this matter, discovery remains ongoing and the deadline to complete discovery was placed on hold while mediation and settlement efforts were ongoing.  There is no trial date scheduled in this matter.  Accordingly, CMCC would not be substantially prejudiced by withdrawal of Counsel, and any new counsel would be able to complete discovery and proceed with the litigation of this matter.

**WHEREFORE**, for all of the reasons and based on the facts stated herein, Counsel respectfully requests that the Court grant their request to withdraw as counsel to CMCC and asks that CMCC be granted a sufficient period of time to retain different counsel.

A copy of this motion is being mailed to CMCC by certified mail, return receipt requested, and also by e-mail and regular U.S. Mail.

- 5 -

Respectfully submitted,
December 9, 2019

s/ Nicholas J. DiCesare
NICHOLAS J. DICESARE
Partner
BARCLAY DAMON LLP
The Avant Building
200 Delaware Avenue, Suite 1200
Buffalo, New York  14202
Tel:  (716) 566-1524
Fax:  (716) 566-4069
Email:  NDiCesare@barclaydamon.com